**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 25-03165-03-CR-S-BP |
| | ) | |
| KRISTY NAOMI JUEL NORTON, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT & RECOMMENDATIONS

Before the Court is Defendant's Motion to Suppress Evidence. (Doc. 112.) This action has been referred to the undersigned for the purpose of hearing and processing all pretrial motions to suppress evidence. Defendant moves for suppression of "any and all evidence or statements derived as the result of the November 6, 2024, pretextual and warrantless search and seizure [] by Deputy First Class Robert Malone and others of the contents of a [] Nissan Rogue bearing license plate 0DF-P93" as "fruit of the poisonous tree." *Id*. at 1. The Government filed Suggestions in Opposition to the Motion. (Doc. 126.)

On March 10, 2026, the undersigned conducted a hearing on the Motion. The Government was represented by Assistant U.S. Attorney Hannah Lucas, and Defendant appeared in person with attorney Marsha Jackson. Robert Malone and Dakota Millard testified as witnesses. Upon review, it is **RECOMMENDED** that the Motion to Suppress Evidence be denied.

### I. Findings of Fact[1]

Robert Malone ("Dep. Malone") is a Deputy K-9 handler with the Howell County Sheriff's Office, where he has worked for three years. Tr. at 4. Dep. Malone and his partner, K-9 Spice,

---

[1] The facts set forth are taken from the testimony adduced and evidence presented at the hearing. See Transcript (doc. 138) ("Tr.") and Government Exhibits 1 and 2 (doc. 135).

are dual certified for detecting methamphetamine, heroin, and cocaine through the North American Police Working Dog Association and the Fulton, Missouri Police Canine Association as of October 2024.  Tr. at 4-5, 14.

Dakota Millard ("TFO Millard") is an investigator with the South Central Drug Task Force through the Missouri State Highway Patrol and has been since February 2024.  Tr. at 17.  TFO Millard has received Basic and Advanced Narcotics Training.  Tr. at 17-18.

Prior to November 6, 2024, TFO Millard was aware that in 2023, the South Central Drug Task Force conducted a traffic stop of a suspect coming from St. Louis, Missouri, with a large quantity of narcotics, and the suspect advised investigators that Defendant and a Jody Cates used St. Louis as a source of supply.  Tr. at 20.  In October 2024, a confidential reliable source informed TFO Millard that Defendant was purchasing large quantities of methamphetamine and fentanyl in St. Louis and driving them back to Howell County stored in a black lockbox.  Tr. at 18, 24.  Next, using the LPR FLOCK system, TFO Millard identified the van that Defendant normally drove and found camera hits showing Defendant's van traveling to St. Louis and returning.  Tr. at 21.

On November 6, 2024, TFO Millard placed a GPS tracker on Defendant's van pursuant to a search warrant.  Tr. at 21.  On the same date, TFO Millard observed Defendant's van park for a long period at the residence of a Jeff Sanders, the owner of a 2011 Nissan Rogue ("Rogue").  Tr. at 21.  Next, TFO Millard used the LPR FLOCK system to confirm that the Rogue traveled to St. Louis that day and was travelling back to Howell County.  Tr. at 21.

TFO Millard then contacted Dep. Malone, who was on patrol.  Tr. at 5.  TFO Millard asked Dep. Malone to conduct a traffic stop on the Rogue and provided the license number for the vehicle.  Tr. at 4, 14.  TFO Millard advised Dep. Malone the Rogue was possibly trafficking narcotics.  Tr. at 15.

2

Dep. Malone observed the Rogue with the same license number travelling eastbound on US 60 in Howell County.  Tr. at 5, 14.  Dep. Malone measured the speed of the Rogue with a radar gun and determined it was travelling at 71 mph in a 65-mph speed limit zone.  Tr. at 6.  Dep. Malone caught up with the Rogue in his vehicle, then initiated a traffic stop.  Tr. at 7.  At 9:58 p.m., Dep. Malone exited his vehicle, approached the Rogue, and advised the occupants that he stopped them for exceeding the posted speed limit.  Tr. at 7; Gov't Ex. 1.  Dep. Malone observed Defendant in the driver's seat of the Rogue along with a passenger, Jody Cates, and a dog also in the Rogue.  Tr. at 7; Gov't Ex. 1.  On Dep. Malone's request, Defendant provided her driver's license but could not provide proof of insurance.  Tr. at 8; Gov't Ex. 1.  Dep. Malone twice asked Defendant where she was coming from, to which she replied she was returning from a doctor's appointment for a heart condition but did not provide the location of the appointment.  Gov't Ex. 1.  At 10:01 p.m., Dep. Malone asked Defendant to exit the Rogue, then returned to his vehicle to check Defendant's information.  Tr. at 8; Gov't Ex. 1.

While Dep. Malone was checking Defendant's information, TFO Millard spoke with Defendant, who made no incriminating statements and requested a lawyer.  Tr. at 19-20.  At 10:09 p.m., Dep. Malone exited his vehicle and TFO Millard advised him that there was reasonable suspicion to perform a K-9 search on the Rogue.  Tr. at 9; Gov't Ex. 1.  Mr. Cates and the dog were removed from the Rogue, and at 10:12 p.m., Dep. Malone and K-9 Spice performed a cursory search around the exterior of the Rogue.  Tr. at 9; Gov't Ex. 1.  K-9 Spice circled the Rogue three or four times before she got on task, as this was her first deployment and they were on the side of a four-lane highway, creating a distraction.  Tr. at 9, 12.  At 10:15 p.m., K-9 Spice sniffed at the driver's side door window, causing her breathing to change and her body to lock up, indicating an alert to the presence of narcotics in the Rogue.  Tr. at 10; Gov't Ex. 1.  Dep. Malone then returned

3

K-9 Spice to his vehicle, approached Defendant, advised her that his dog had positively alerted to the presence of narcotics in the Rogue, and asked her where the drugs were located. Tr. at 10; Gov't Ex. 1. Defendant responded with a denial. Tr. at 10; Gov't Ex. 1.

At 10:18 p.m., Dep. Malone and TFO Millard began to search the interior of the Rogue. Tr. at 10, 21; Gov't Ex. 1. Dep. Malone found a glass pipe in a bag between the console and the driver's seat. Tr. at 10. In the back seat, TFO Millard found a large black lockbox partially sticking out of a backpack. Tr. at 11, 13, 21, 26. Dep. Malone removed the lockbox from the Rogue, placed it on the ground in front of his vehicle, and deployed K-9 Spice on it. Tr. at 11, 22; Gov't Ex. 1. Upon sniffing the lockbox, K-9 Spice completely changed her behavior, pawing at the box and breathing differently, indicating an alert to the presence of narcotics in the lockbox. Tr. at 11, 22; Gov't Ex. 1.

TFO Millard secured the still-unopened lockbox, while Dep. Malone issued a warning to Defendant for the traffic stop then took her to the Howell County Jail for processing. Tr. at 11-12. The next morning, TFO Millard obtained a search warrant signed by a Howell County Circuit Court Judge for the lockbox. Tr. at 22; Gov't Ex. 2. TFO Millard then opened the lockbox and found a large quantity of narcotics, specifically 368 grams of methamphetamine, 261 fentanyl capsules, and a 5.74-gram gray solid containing cocaine, fentanyl, and tramadol. Tr. at 23-24.

### III.     Conclusions of Law

The Fourth Amendment protects persons from unreasonable searches and seizures by the government. *See* U.S. Const. amend. IV; *United States v. Va Lerie*, 424 F.3d 694, 701 (8th Cir. 2005). "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357

4

(1967). Generally, evidence obtained because of an unlawful search or seizure, and the fruits therefrom, cannot be used against a defendant and must be suppressed. *United States v. Riesselman*, 646 F.3d 1072, 1078-79 (8th Cir. 2011).

Defendant primarily argues that because the officers searched the vehicle and seized items without a warrant, "suppression is required unless the government meets its burden of proving a clearly delineated exception to the Fourth Amendment warrant requirement." (Doc. 112 at 4.) Defendant also claims the "mere traffic stop for a speeding violation is an orchestrated pretext to investigate [her] for drug trafficking without proper Fourth Amendment justification." *Id*. at 5. And, according to Defendant, there was an "impermissibly prolonged detention" to allow the dog sniff of the Rogue and the lockbox. *Id*. Lastly, Defendant moves for suppression of any statements, arguing she was not advised of her *Miranda* rights prior to being questioned. *Id*.

As follows, the undersigned concludes that these arguments lack merit, finding: A. the initial traffic stop was supported by probable cause for a speeding violation; B. the detention was not impermissibly prolonged by the dog sniff of the Rogue, which was supported by reasonable suspicion; and, C. the Government has shown that the search of the cab of the Rogue was supported by probable cause under the "automobile exception" to the warrant requirement. Additionally, Defendant has withdrawn her motion to suppress any statements. In summary, because there were no Fourth Amendment violations, the fruit of the poisonous tree doctrine does not apply and the Motion to Suppress Evidence should be denied.

### A. The basis for the traffic stop

Defendant claims that the traffic stop for a speeding violation was "an orchestrated pretext to investigate [her] for drug trafficking without proper Fourth Amendment justification." *Id*. A traffic stop is considered a seizure for Fourth Amendment purposes. *Delaware v. Prouse*, 440

5

U.S. 648, 653 (1979). To justify the seizure, the stop must be "supported by either probable cause or an articulable and reasonable suspicion that a traffic violation has occurred." *United States v. Washington,* 455 F.3d 824, 826 (8th Cir. 2006). It is well-established that "*any* traffic violation, regardless of its perceived severity, provides an officer with probable cause to stop the driver." *United States v. Jones*, 275 F.3d 673, 680 (8th Cir. 2001). "Once an officer has probable cause, the stop is objectively reasonable and any ulterior motivation on the officer's part is irrelevant." *United States v. Frasher*, 632 F.3d 450, 453 (8th Cir. 2011).

Here, Dep. Malone measured the speed of the Rogue with a radar gun and determined it was travelling at 71 mph in a 65-mph speed limit zone, a speeding violation under Mo. Rev. Stat. § 304.010 As a result, the traffic stop was supported by probable cause and was objectively reasonable, regardless of any other subjective intentions. Furthermore, at the conclusion of the stop, Dep. Malone issued a warning to Defendant for the speeding violation. Therefore, this argument provides no basis for suppression.

### B.      The duration of the traffic stop

Defendant contends with no further argument that "K-9 Spice circling the car multiple times before the pipe was found and then being asked to check the box multiple times was an impermissibly prolonged detention." (Doc. 112 at 5.) The undersigned disagrees with this contention, as follows.

In determining the reasonableness of a detention, courts look to the law enforcement purposes to be served by the stop, the time reasonably needed to effectuate such purposes, and whether the police diligently pursued such purposes. *See Williams v. Decker*, 767 F.3d 734, 741-42 (8th Cir. 2014). If prolonged beyond the time reasonably required to complete the purpose, a constitutionally permissible stop can become unlawful. *United States v. Williams*, 929 F.3d 539,

544 (8th Cir. 2019). During a traffic stop, an officer "may detain the offending motorist while the officer completes a number of routine, but somewhat time-consuming tasks related to the traffic violation[.]" *United States v. Barragan*, 379 F.3d 524, 528–29 (8th Cir. 2004). An officer may make inquiries unrelated to a traffic violation, "so long as those inquiries do not measurably extend the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009).

Here, Dep. Malone stopped Defendant at 9:58 p.m. and completed routine checks by 10:09 p.m., effectively concluding the traffic stop. During these eleven minutes, Dep. Malone pursued valid purposes in investigating the offense of speeding. First, Dep. Malone spoke briefly with Defendant for approximately three minutes, requesting identification and asking about her route. Dep. Malone then returned to his vehicle to run routine checks on Defendant and Mr. Cates for approximately eight minutes. Eleven minutes to complete these tasks is a reasonable amount of time and Dep. Malone diligently pursued these tasks. At this point, the traffic stop was effectively completed, apart from the issuance of a warning.

TFO Millard then told Dep. Malone that he should perform a dog sniff of the exterior of the Rogue based on reasonable suspicion. However, an officer may not extend a traffic stop beyond the duration of time necessary to effectuate the purpose of the stop, "unless he develops a reasonable, articulable suspicion of criminal activity." *United States v. Gastelum*, 11 F.4th 898, 902 (8th Cir. 2021). The Supreme Court has held that a dog sniff for narcotics is unrelated to the purpose of a traffic stop. *Rodriguez v. United States*, 575 U.S. 348, 356-57 (2015). Therefore, absent reasonable suspicion, officers may not extend the duration of a traffic stop to conduct a dog sniff. *Id*. at 357.

An officer has reasonable, articulable suspicion to extend a stop and conduct investigations unrelated to the traffic offense when he has "particularized, objective facts which, taken together

7

with rational inferences from those facts, reasonably warrant [] suspicion that a crime [is] being committed." *United States v. Jones*, 269 F.3d 919, 927 (8th Cir. 2001) (quoting *United States v. Beck*, 140 F.3d 1129, 1136 (8th Cir.1998)). "When multiple officers are involved in an investigation, probable cause may be based on their collective knowledge and need not be based solely on the information within the knowledge of the arresting officer as long as there is some degree of communication." *United States v. Robinson*, 664 F.3d 701, 703 (8th Cir. 2011).

At the time of the traffic stop, the officers' collective knowledge included TFO Millard's awareness that in 2023, a suspect in a separate investigation informed officers that Defendant and Mr. Cates obtained narcotics in St. Louis. Then in October 2024, a confidential reliable source informed TFO Millard that Defendant was purchasing large quantities of methamphetamine and fentanyl in St. Louis and driving them back to Howell County. Using the LPR FLOCK system, TFO Millard then found camera hits showing Defendant's van traveling to St. Louis and returning.

On the day of the traffic stop, TFO Millard placed a GPS tracker on Defendant's van pursuant to a search warrant and observed her van park for a long period at the residence of a Jeff Sanders. TFO Millard then determined that Mr. Sanders owned the Rogue and, using the LPR Flock system, he confirmed via camera hits that the Rogue had traveled to St. Louis and was returning to Howell County that evening. Lastly, at the traffic stop, TFO Millard observed Defendant and Mr. Cates in the Rogue.

Based on this knowledge, including the information learned in 2023 that Defendant and Mr. Cates obtained narcotics in St. Louis along with the recent information from the reliable source including Defendant's name and route for obtaining narcotics, corroborated by the camera hits showing Defendant's van travelling to and from St. Louis on previous dates, the Rogue travelling to and from St. Louis on the date of the traffic stop, and the presence of Defendant and Mr. Cates

in the Rogue when stopped, the officers had reasonable suspicion that Defendant was transporting narcotics in the Rogue. See *United States v. Hill*, 91 F.3d 1064, 1069 (8th Cir. 1996) (reasonable suspicion justifying investigative stop supported by corroboration of an informant's tips, reducing the chances of a reckless or prevaricating tale, thus providing a substantial basis for crediting the tips). As a result, the officers extended the duration of the stop lawfully to conduct a dog sniff based on reasonable suspicion of criminal activity.

Furthermore, the duration of the stop was extended by only six minutes total, from 10:09 p.m., when Dep. Malone completed his routine checks, to 10:15 p.m., when K-9 Spice positively alerted to the presence of narcotics. During these six minutes, the officers acted diligently to remove Mr. Cates and the passenger dog from the Rogue, deploy K-9 Spice, and conduct the sniff of the Rogue's exterior. Under these circumstances, a six-minute detention was not unreasonable. See *United States v. Lyons*, 486 F.3d 367, 372 (8th Cir. 2007) (31-minute detention awaiting arrival of drug dog was not excessive); *United States v. Donnelly*, 475 F.3d 946, 951, 954 (8th Cir. 2007) (59-minute detention to wait for a drug dog was reasonable where the officer requested the dog immediately after developing reasonable suspicion).

Similarly, the dog sniff of the black lockbox lasted approximately one minute before K-9 Spice alerted to the presence of narcotics, also a reasonable amount of time to conduct a dog sniff. As a result, Defendant's assertion that the traffic stop was impermissibly prolonged by the dog sniffs lacks merit, and the Motion should be denied as to this basis.

### C.      Probable cause to search the vehicle

Defendant also contends that because the officers searched the vehicle and seized items without a warrant, "suppression is required unless the government meets its burden of proving a clearly delineated exception to the Fourth Amendment warrant requirement." (Doc. 112 at 4.)

9

The undersigned finds that the Government has met its burden by showing the "automobile exception" to the warrant requirement applies in this matter.

Under the "automobile exception," a search of a vehicle does not require a warrant if the search is supported by probable cause. *United States v. Brown*, 49 F.3d 1346, 1350 (8th Cir. 1995). Probable cause to search a vehicle exists where there is a "fair probability that contraband or evidence of a crime will be found" in that vehicle. *Id.*

"A dog sniff resulting in an alert on a container, car, or other item, standing alone, gives an officer probable cause to believe that there are drugs present," provided the dog is reliable. *United States v. Tuton*, 893 F.3d 562, 570 (8th Cir. 2018). In establishing reliability, when "a bona fide organization has certified a dog after testing [her] reliability in a controlled setting, a court can presume (subject to any conflicting evidence offered) that the dog's alert provides probable cause to search." *Florida v. Harris*, 568 U.S. 237, 246-47 (2013).

Here, the Court has a sufficient basis to trust K-9 Spice's alerts, as K-9 Spice and her handler Dep. Malone were dual certified for detecting methamphetamine, heroin, and cocaine by the North American Police Working Dog Association and the Fulton, Missouri Police Canine Association as of October 2024. And, during the traffic stop, K-9 Spice alerted for the presence of narcotics at the exterior driver's window, providing probable cause to search the Rogue.

In addition, the "automobile exception's scope extends to the automobile and the containers within it where officers have probable cause to believe contraband or evidence is contained." *United States v. Keck*, 2 F.4th 1085, 1089 (8th Cir. 2021) (citing *California v. Acevedo*, 500 U.S. 565, 580 (1991)). And containers within a car that may be lawfully searched includes "a passenger's personal belongings." *United States v. Murillo-Salgado*, 854 F.3d 407, 418 (8th Cir. 2017) (citing *Wyoming v. Houghton*, 526 U.S. 295, 302 (1999)). Accordingly, the officers were

justified in searching the entire cab of the Rogue and any containers therein that may have contained narcotics, including the backpack in the backseat.

Therefore, the dog sniff provided probable cause, the "automobile exception" to the warrant requirement applies, and the Motion should be denied as to this basis.

### D. Miranda warnings

Defendant claims she was not advised of her *Miranda* rights prior to questioning (Doc. 112 at 5.) During the hearing, however, defense counsel clarified that there are no statements that Defendant seeks to suppress and she is withdrawing the request to suppress any statements. Tr. at 3, 29. Accordingly, this basis for suppression has been withdrawn.

### E. Fruit of the poisonous tree

Defendant also asserts that "all evidence and statements derived directly or indirectly from this warrantless search and seizure are 'fruit of the poisonous tree.'" (Doc. 112 at 1.) Under the fruit of the poisonous tree doctrine, the exclusionary rule bars the admission of evidence obtained directly or indirectly through the exploitation of police illegality. *See Wong Sun v. United States*, 371 U.S. 471, 484-88 (1963). As set forth above, Defendant has withdrawn her request to suppress any statements. Tr. at 29. And, because there is no finding that any evidence was obtained in violation of the Fourth Amendment, it follows that the fruit of the poisonous tree doctrine does not apply. Therefore, this argument lacks merit and presents no basis for suppression.

### IV. Recommendation

Based on the foregoing, it is **RECOMMENDED** that the Motion to Suppress Evidence be **DENIED**.

/s/ *David P. Rush*
DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE

DATE: May 13, 2026

11